# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BUDICAK, INC., BLUE MARLIN
ARBITRAGE, LLC, and PRIME TRADING,
LLC, individually and on behalf of all others
similarly situated,

      **Plaintiffs,**

      v.

LANSING TRADE GROUP, LLC, et al.,

      **Defendants.**

Case No. 2:19-CV-2449-JAR-ADM

## MEMORANDUM AND ORDER

Plaintiffs Budicak, Inc., Blue Marlin Arbitrage, LLC, and Prime Trading, LLC (collectively, "Plaintiffs") filed this putative class action on behalf of a class of all purchasers, sellers, and/or holders of wheat futures and options on futures contracts between February 1, 2015 and March 31, 2015 (the proposed "Class Period") against Defendants Lansing Trade Group, LLC ("Lansing"), Cascade Commodity Consulting, LLC ("Cascade"), and certain of their employees and related entities (John Does 1–10) (collectively, "Defendants"). Plaintiffs allege that during the Class Period, Defendants manipulated the prices of Chicago Board of Trade ("CBOT") wheat futures and options contracts in violation of the Commodity Exchange Act and the Sherman Antitrust Act. Before the Court is Defendant Cascade's Motion to Dismiss for Improper Venue or, Alternatively, Lack of Personal Jurisdiction (Doc. 137). The motion is fully briefed, and the Court is prepared to rule. For the reasons provided below, Cascade's motion is denied.

**I.     Background**

The Amended Complaint (Doc. 38) in this putative class action alleges that Defendants were involved in manipulating wheat prices from February 1, 2015 to March 31, 2015.  In an effort to recover their respective losses resulting from Defendants' alleged wrongdoing, Plaintiffs bring putative class action claims for: (1) market manipulation in violation of the Commodity Exchange Act ("CEA")[1] and Commodity and Futures Trading Commission ("CFTC") Rule 180.2, (2) employment of a manipulative or deceptive device in violation of the CEA and CFTC Rule 180.1, (3) principal-agent liability in violation of the CEA and CFTC Regulation 1.2, (4) aiding and abetting manipulation in violation of the CEA, (5) unjust enrichment, and (6) violating Section 1 of the Sherman Antitrust Act ("Sherman Act").[2]

Lansing is an international commodity merchandising company that actively traded CBOT wheat futures and options during the Class Period.  Lansing is a Delaware limited liability company whose principal place of business is in Kansas.  Plaintiffs allege that Lansing leveraged its status as a dominant market participant in the cash wheat market to conspire and artificially manipulate the price of wheat futures and options throughout the Class Period.  Plaintiffs allege these actions were a premeditated, manipulative scheme that violated the CEA, CFTC rules and regulations, the Sherman Act, and the common law.

Cascade is a limited liability company based in Oregon that Al Conway, its current Chief Executive Officer, founded in 2007.  Cascade produces a daily cash wheat newsletter, the "Cash Wheat Report," which contains information about wheat markets such as news, weather, supply and demand projections, and perspectives about investments.  The Cash Wheat Report has about

---

[1] 7 U.S.C. § 1 *et seq.*

[2] 15 U.S.C. § 1 *et seq.*

eighty-two subscribers, and its readership is alleged to include hedge funds, private grain analysts, futures brokerage companies, cash brokerage companies, regional grain companies, international grain companies, flour millers, foreign procurement managers, and foreign wheat exporters. The Cash Wheat Report generates more than one-million dollars each year from its subscribers, and the average subscription costs more than $10,000 per year. Plaintiffs allege that Cascade conspired with Lansing to amplify the false signals Lansing sent to the wheat market, exacerbating the effect of Lansing's alleged misconduct.

Plaintiffs filed this putative class action in federal court in the Northern District of Illinois on July 20, 2018, naming Lansing and "John Does 1–6" as Defendants.[3] On September 7, 2018, Lansing moved to transfer the case to the District of Kansas.[4] Plaintiffs then amended their Complaint upon learning the identities of certain "John Doe" defendants.[5] The Amended Complaint names Lansing, Cascade, and "John Does 6–10" as defendants. While Lansing's motion to transfer was pending, Cascade did not file a motion to join or any response opposing transfer. Instead, Cascade filed its own motion to dismiss for lack of personal jurisdiction.[6] Ultimately, Judge Chang of the Northern District of Illinois granted Lansing's motion to transfer the case to the District of Kansas.[7] In so doing, Judge Chang terminated all pending motions without prejudice to refiling.[8]

---

[3] Doc. 1.
[4] Doc. 26.
[5] Doc. 38.
[6] Doc. 52.
[7] Doc. 110.
[8] *Id.*

**II.     Discussion**

Cascade moves to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue or, alternatively, under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Cascade contends that since Plaintiffs relied on the nationwide service-of-process provision in the Sherman and Clayton Act to establish personal jurisdiction, Plaintiffs must also satisfy the venue provisions of those statutes. Cascade argues that Plaintiffs have failed to do so, warranting dismissal. In the alternative, Cascade contends that if Plaintiffs rely on the general venue statute[9] to render venue proper in the District of Kansas, then their claims should be dismissed for want of personal jurisdiction over Cascade. The Court will address Cascade's venue arguments before turning to due process considerations.

**A. Venue**

Whether to dismiss a case for improper venue "lies within the sound discretion of the district court."[10] When a defendant challenges venue, the plaintiff bears the burden of proving that venue properly lies in the district.[11] At the motion to dismiss stage, a plaintiff must "present only a prima facie showing of venue."[12] In assessing whether a plaintiff has met its burden, the facts alleged in a plaintiff's complaint are taken as true, but only to the extent they are uncontroverted by the defendant's evidence.[13] If a plaintiff pleads multiple claims, "venue must be proper for each claim."[14] A court's consideration of evidence and affidavits outside the

---

[9] 28 U.S.C. § 1391.

[10] *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998) (citations omitted).

[11] *Johnson v. N. States Power Co.*, No. 99–2394–GTV, 2000 WL 1683658, at *2 (D. Kan. Nov. 2, 2000).

[12] *Home Ins. Co. v. Thomas Indus. Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (cited with approval in *Pierce*, 137 F.3d at 1192)).

[13] *Pierce*, 137 F.3d at 1192.

[14] *Gen. Bedding Corp. v. Echevarria*, 714 F. Supp. 1142, 1144 (D. Kan.1989) (citing *Beattie v. United States*, 756 F.2d 91, 100 (D.C. Cir. 1984)).

pleadings does not convert a Rule 12(b)(3) motion to a motion for summary judgment.[15] If the parties present conflicting evidence, courts are inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff.[16]

Plaintiffs rely on the Sherman Act and the Clayton Act as bases for personal jurisdiction over Defendants. Both statutes authorize the use of nationwide service of process to confer personal jurisdiction over corporate defendants. Section 12 of the Clayton Act[17] reads:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

The parallel provision of the Sherman Act contains nearly identical language. It permits actions to

> be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.[18]

Cascade does not contest that it was properly served under the Sherman and Clayton Acts. Instead, the parties dispute whether the jurisdictional clauses of these statutes are independent of the venue clauses. Plaintiffs argue that the nationwide service of process provision of the Sherman and Clayton Acts can be combined with the general venue provision, 28 U.S.C. § 1391, which permits civil actions to be brought in "any judicial district in which any

---

[15] *Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1176 (D. Kan. 1999).

[16] *M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679, 683 (D. Kan. 1994).

[17] 15 U.S.C. § 22.

[18] 7 U.S.C. § 25(c).

defendant is subject to the court's personal jurisdiction with respect to such action."[19]  Cascade, by contrast, argues that if Plaintiffs rely on the Sherman and Clayton Acts' nationwide service-of-process provisions to confer personal jurisdiction, Plaintiffs must satisfy each statute's respective venue provision.  To permit the mix-and-match approach that Plaintiffs propose would eliminate all venue restrictions in federal antitrust actions, according to Cascade.

The Tenth Circuit has not yet addressed the severability of the venue and jurisdiction provisions of these statutes.[20]  This Court does not resolve the issue because even under Cascade's more stringent construction, venue is proper in this Court.  Plaintiffs invoked the nationwide service-of-process provisions of the Sherman and Clayton Acts to confer personal jurisdiction over Cascade.  According to Cascade, Plaintiffs' venue options are consequently limited to judicial districts in which Cascade is an inhabitant, may be found, or transacts business.  In the case of the Sherman Act claims, Plaintiffs' venue options also include judicial districts "wherein any act or transaction constituting the violation occur[ed]."[21]  Neither party

---

[19] 28 U.S.C. § 1391(b)(3).  The Court notes that this subsection is only applicable in cases where 13 U.S.C. § 1391(b)(1) and (2) do not provide a district in which the action may otherwise be brought.

[20] Five of federal circuits have addressed this issue.  The Ninth and Third Circuits take the approach that combining the nationwide service-of-process provision of these statutes with the general venue statute is permissible.  *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 117 (9th Cir. 2004) ("[U]nder Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant does not depend upon there being proper venue in that court."); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004) ("[T]he service of process provision on foreign corporations is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act."). The Seventh, Second, and D.C. Circuits take the opposite view, reasoning that treating the venue and jurisdiction clauses of these statutes independently eliminates any restriction on where corporate defendants would be required to defend claims for violating federal antitrust laws.  *See KM Enter., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013) ("To avail oneself of the privilege of nationwide service of process, a plaintiff must satisfy the venue provisions of Section 12 [of the Clayton Act]'s first clause.  If [the plaintiff] wishes to establish venue exclusively through Section 1391, [the plaintiff] must establish personal jurisdiction some other way."); *see also GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ("A party seeking to take advantage of Section 12 [of the Clayton Act]'s liberalized service provisions must follow the dictate of both of its clauses."); *accord Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) (concluding that Section 12 of the Clayton Act "can properly confer personal jurisdiction over a defendant only . . . where Section 12 venue lies") (internal citations omitted).

[21] 7 U.S.C. § 25(c).

argues that Cascade inhabits Kansas, nor that it may be found here. Instead, the parties disagree on whether Cascade "transacts business" in this District sufficient to render venue proper. Plaintiffs also argue that, with respect to their Sherman Act claims, the violations occurred in Kansas.

In the seminal case defining "transacts business," *Eastman Kodak*,[22] the United States Supreme Court reasoned that the addition of the "transacts business" language in federal antitrust laws indicated congressional intent "to enlarge the local jurisdiction of the district courts so as to establish the venue of" federal antitrust suits.[23] The Court concluded that, within the meaning of the federal antitrust laws, corporate defendants may be said to "transact business" in a forum if, "in the ordinary and usual sense, it 'transacts business' therein of any substantial character."[24] In the end, the Court found the corporate defendant had transacted business in the forum, relying on factors such as the interstate character of the business, the continuous course of business it had with the forum, and the sale of its goods within the forum.[25]

Here, the record shows that at least two of Cascade's eighty-two annual subscribers have billing addresses in Kansas.[26] Cascade argues that these subscribers are but a small percentage of its total subscribers, making its business in Kansas *de minimis*. Under this logic, an entity whose customer base is far-reaching and evenly distributed across multiple judicial districts would avoid ever being said to "transact business" in any forum. Indeed, Cascade made this same "*de minimis*" argument in its motion to dismiss when this case was pending in the Northern

---

[22] 273 U.S. 359 (1927).

[23] *Eastman*, 273 U.S. at 372.

[24] *Id.* at 373.

[25] *Id.* at 370–71.

[26] Doc. 138-1 at 2.

7

District of Illinois to argue it did not transact business in Illinois.[27] This is the precise result that Congress sought to avoid when it broadened the venue provision of the federal antitrust laws. Moreover, Cascade's business is interstate in nature, relying on subscribers in a variety of forums. Its business in Kansas, which includes subscription-based access to daily publications, is continuous. Accordingly, Cascade transacts business in Kansas, and Plaintiffs satisfy the venue provisions of the Sherman and Clayton Acts.

**B. Due Process**

Determining that venue is proper under the Sherman and Clayton Acts does not end the Court's inquiry. Once a court determines that jurisdiction and venue are proper under a nationwide service-of-process statute, it must then consider "'whether the exercise of such jurisdiction comports with due process.'"[28]

"[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant."[29] Fifth Amendment due process limitations are similar to those of the Fourteenth Amendment's Due Process Clause in some respects because the core concept of each is "protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum" and the "*International Shoe* doctrine of not offending 'traditional notions of fair play and substantial justice.'"[30] Bearing these similarities in mind, courts apply a modified minimum contacts analysis for evaluating due process under the Fifth Amendment. The burden

---

[27] Doc. 56 at 13–14; *see also* Doc. 66 at 2.

[28] *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

[29] *Peay*, 205 F.3d at 1212.

[30] *Id.* at 1215 (citing *Int'l Shoe Co. v. Washington*, 326 US. 310, 316 (1945)).

8

is shifted away from the plaintiff, who typically has the burden of making a prima facie showing that personal jurisdiction is proper, and onto the defendant to show, in the first instance, "that [its] liberty interests actually have been infringed."[31] In addition, the defendant must show that "the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [it] unfairly is at a severe disadvantage in comparison to [its] opponent.'"[32]

The Tenth Circuit provides five factors for determining whether the defendant has met its burden to establish "constitutionally significant inconvenience" in nationwide service-of-process cases.

> [I]n evaluating whether the defendant has met his burden of establishing constitutionally significant inconvenience, courts should consider the following factors: (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business; [. . .] (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[33]

The Tenth Circuit also emphasizes that "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."[34] Even where the defendant "successfully demonstrates that litigation in the plaintiff[s'] chosen form is unduly

---

[31] *Id.* at 1212.

[32] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[33] *Id.* at 1212–13 (internal citations omitted).

[34] *Id.* at 1212 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946 (11th Cir. 1997)).

inconvenient," jurisdiction may still "comport with due process if the federal interest in litigating in the chosen forum outweighs the burden imposed on the defendant."[35]

> To determine whether infringement on the defendant's liberty is justified sufficiently by government interests, "courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives."[36]

Here, Cascade provides an affidavit from its Chief Executive Officer, Al Conway, in support of its motion to dismiss.[37] That affidavit provides that Cascade has no registered agents or employees in Kansas, does not have any offices or places of business in Kansas, and is not registered to do business in Kansas. The affidavit also explains that, during the proposed Class Period, the Cash Wheat Report had eighty-two subscribers. Only two of those subscribers had billing addresses in Kansas. Cascade's only office is in Oregon City, Oregon. In Plaintiffs' Amended Complaint, they allege that Cascade conspired with individuals in Kansas who worked for Lansing in order to commit violations of the federal antitrust laws. Plaintiffs allege that the publication and consumption of the Cash Wheat Report amplified the impact of Lansing's illegal actions.

Based on this record, the Court finds that Cascade has very few contacts with Kansas. Such contacts are limited to a series of phone calls to people associated with Lansing in Kansas and billing two subscribers in Kansas for access to the Cash Wheat Report. Notwithstanding its

---

[35] *Peay*, 205 F.3d at 1213 (quoting *Republic of Panama*, 119 F.3d at 948).

[36] *Id.* (quoting *Republic of Panama*, 119 F.3d at 948).

[37] Doc. 138-1.

limited connections to Kansas, however, defending itself in this forum will not be particularly burdensome for Cascade. Cascade conducts business across state boundaries—and likely international borders—and has access to counsel in Kansas.[38] Additionally, the distance from Oregon to Kansas does not support a finding of inconvenience in light of modern technology and transportation.[39] Judicial economy also counsels in favor of finding jurisdiction so the claims against Cascade—which are identical to those brought against Lansing—can be heard as part of a single proceeding. If Plaintiffs were required to bring their claims against Cascade in another forum, an additional court would be required to evaluate near-identical claims. The Court also notes that Lansing filed a motion to transfer when this case was pending in the Northern District of Illinois, and Cascade did not indicate any opposition to that motion during the eleven months it was pending.

As Lansing noted in its motion to transfer, a significant amount of discovery related to this dispute will occur in Kansas. The gravamen of the alleged wrongdoing in Plaintiffs' Amended Complaint took place in Kansas. To the extent discovery would need to take place in Oregon, Plaintiffs have offered to accommodate Cascade by, for instance, deposing Conway in Oregon. Lastly, Plaintiffs' federal claims are brought pursuant to the Sherman Act and the Clayton Act, statutes which are primarily remedial. To the extent Cascade was involved in any conspiracy in violation of the federal antitrust laws, such actions would be felt beyond the borders of Oregon.

---

[38] *Peay*, 205 F.3d at 1212 (referencing "defendant's access to counsel" as a factor in the convenience analysis).

[39] *Id.* at 1213 ("Certainly, in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened.") (internal quotation marks and citations omitted).

11

Upon consideration of the foregoing factors and the evidence provided by Cascade, the Court finds that Cascade has not met its burden to demonstrate that it would suffer constitutionally significant inconvenience by defending this suit in Kansas. Even if Cascade had shown that litigating this case in Kansas would be gravely difficult, this Court is still permitted to exercise personal jurisdiction over Cascade if "the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."[40] As previously discussed, the burdens in this case are relatively minimal and are outweighed by the federal interest in resolving this putative class action dispute in a single district. The exercise of jurisdiction over Cascade in the District of Kansas comports with the Fifth Amendment, and Cascade's motion to dismiss is thereby denied.

### III. Conclusion

For the reasons set forth above, Cascade is subject to the personal jurisdiction of this Court and venue is proper in the District of Kansas.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Cascade's Motion to Dismiss (Doc. 137) is **denied**.

**IT IS SO ORDERED.**

Dated: February 14, 2020

                                        s/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

[40] *Id.* at 1213 (quoting *Republic of Panama*, 119 F.3d at 948).